**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re: JEAN LEONARD HARRIS, ) | Civil No. 06cv1939 WGH (RBB) |
| Debtor. ) | Bankruptcy No. 99-32841-B7 |
| _____ ) | Bankruptcy Adversary No. 06-90289 |
| JEAN LEONARD HARRIS, an individual, ) | |
| Appellant, ) | **ORDER** |
| v. ) | |
| SANDRA WITTMAN, an individual; ) | |

In Re: JEAN LEONARD HARRIS,

        Debtor.

_____

JEAN LEONARD HARRIS, an individual,

        Appellant,

v.

SANDRA WITTMAN, an individual;
JACK SWAIN, an individual; PYLE,
SIMS, DUNCAN & STEVENSON, a
professional corporation; GRANT AND
ZEKO, a professional corporation; and
DOES 1 TO 10, Inclusive,

        Appellees.

_____

Civil No. 06cv1939 WGH (RBB)

Bankruptcy No. 99-32841-B7
Bankruptcy Adversary No. 06-90289

**ORDER**

HAYES, Judge:

The matter before the Court is the appeal of the Bankruptcy Court's dismissal of a breach-of-contract action originally filed in state court by Appellant Jean Leonard Harris.

**I.    Background**

On July 26, 1999, Appellant Jean Leonard Harris filed a voluntary Petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code in United States

1   Bankruptcy Court, Southern District of California, Case No. 99-32841-B7 ("Bankruptcy
2   Case").  (Record on Appeal ("ROA") 779-80.)  The Bankruptcy Case created an estate (the
3   "Bankruptcy Estate") consisting of, among other things, all claims and causes of action against
4   third parties.  *See* 11 U.S.C. § 541.

5          Appellee Sandra Wittman was appointed Chapter 7 Interim Trustee on July 29, 1999.
6   (ROA 782.)  On March 21, 2000, Wittman filed a "Complaint for Turnover of Property;
7   Avoidance of Fraudulent Conveyances; Avoidance of Liens; Avoidance of Preferential
8   Transfers; Avoidance of Post-Petition Transfer; Conspiracy; Declaratory Relief; and Injunctive
9   Relief" in Adversary Proceeding No. 00-90157 (the "Adversary Proceeding").  (ROA 821-46.)
10  Among the Defendants in the Adversary Proceeding were Harris and his wife, Sandra Harris.
11  (ROA 821-46, 898.)  In the Adversary Proceeding Complaint, Wittman alleged that the transfer
12  from Harris to his wife of, among other assets, Quatre Corporation stock,[1] and a business and
13  related property known as "Alpine Personal Storage" (the "Alpine property"), was voidable
14  and recoverable by the Bankruptcy Estate as a fraudulent transfer of property.  (ROA 821-46.)

15         In July 2000, Wittman and Appellee Jack Swain, a creditor of the Bankruptcy Estate,[2]
16  entered into an "Agreement for Use and Assignment of Interests and Prosecution of Claims"
17  (the "Swain Agreement").  (ROA 852-69.)  Under the Swain Agreement, Swain was to
18  prosecute the Adversary Proceeding as the Special Representative of the Bankruptcy Estate,
19  in exchange for which he would receive reimbursement of his costs and expenses, and would
20  retain a percentage of the net recovery from the Adversary Proceeding.  (ROA 855-56.)  On
21  July 14, 2000, Wittman filed a Motion of the Trustee to Assign Claims to Jack Swain as
22  Special Representative.  On November 6, 2000, the Court entered an order approving the
23  assignment.  (ROA 848-69.)

24         On November 19, 2002, the Bankruptcy Court advised the parties that it was granting
25  Swain's motion for summary judgment.  (ROA 895.)  After the Court's ruling, the parties

26  _____

27     [1]  Prior to July 21, 1999, Harris was sole shareholder of Quatre Corporation.  (ROA
    452.)

28     [2]  On July 19, 1999, Swain obtained a judgment against Harris in state court.  (ROA
    452.)  Harris filed the Petition for Bankruptcy a week later.  (ROA 779-80.)

reached a settlement of the entire Adversary Proceeding.  (ROA 897-907.)  Appellees Pyle Sims Duncan & Stevenson, Peter Duncan, Grant & Zeko and Miles Grant signed the Stipulation for Settlement as the attorneys for Swain.  (ROA 900.)  The Stipulation for Settlement and the Settlement Agreement were approved by the Bankruptcy Court on January 8, 2003.  (ROA 923-26.)  Under the Stipulation for Settlement, Sandra Harris and/or Harris were required to transfer, *inter alia*, all outstanding shares of the Quatre Corporation, all outstanding shares of the Unicus Corporation, title to the Alpine property and a 1957 Mercedes-Benz automobile to the Bankruptcy Estate.  (ROA at 901, 903.)

On May 2, 2003, Wittman filed a Motion for Sale of Personal Property under 11 U.S.C. Section 363(b), seeking Bankruptcy Court approval for the sale of the certain assets of the Bankruptcy Estate to Swain, including stock of Unicus Corporation and the 1957 Mercedes-Benz.[3]  (ROA 938-49.)  In an affidavit in support of the Motion, Wittman stated that it would be in the best interest of the Bankruptcy Estate to sell certain assets, including the Unicus Corporation stock and the Mercedes, to Swain in exchange for a waiver of claims and cash consideration.  (ROA 951-56.)  On May 16, 2006, Harris filed an opposition brief, arguing that the Motion "is forbidden by the clear terms of the November 19, 2002, Settlement Agreement," and the "Motion is a sham transaction wherein Swain has concocted imaginary consideration to steal away the assets of the bankruptcy estate."  (ROA 961, 966.)  On June 30, 2003, the Bankruptcy Court issued an Order Approving Trustee's Motion for Sale of Personal Property under 11 U.S.C. Section 363(b) (the "June 30 Order").  In the June 30 Order, the Bankruptcy Court approved the sale of the stock of Unicus Corporation to Swain, finding that Swain was a buyer in good faith pursuant to 11 U.S.C. § 363(m) and that the sale of the Unicus Corporation stock is retroactive, such that the Unicus stock was never part of the Bankruptcy Estate within the meaning of 11 U.S.C. § 541.  (ROA 968-77.)

Harris appealed the June 30 Order to this Court.  On October 22, 2003, this Court (Huff, Judge) dismissed the appeal, finding that Harris' appeal was moot because Harris had failed to seek a stay of the June 30 Order as required by 11 U.S.C. § 363(m).  (ROA 995-98.)  Harris

---

[3]  The Unicus Corporation owned the Alpine Property.  (ROA 13, 499, 951-56, 963.)

argued that the sale of the Unicus stock was invalid and outside the protection of § 363(m) because Swain was not a good faith purchaser, specifically arguing that Swain did not pay value for the stock, and Swain and the trustee colluded to perpetrate a fraud on the Estate and the other creditors. (*Id.*) Judge Huff affirmed the Bankruptcy Court's factual findings that the sale was entered into without collusion, that the sale was in the best interest of the Estate, and that Swain was a good faith purchaser. (*Id.*) On February 28, 2005, the Ninth Circuit affirmed Judge Huff's dismissal of Harris' appeal of the June 30 Order. (ROA 1016-18.)

On May 2, 2006, Harris filed a complaint in the Superior Court for the County of San Diego, State of California (the "Complaint"), naming all Appellees as defendants. (ROA 47-63.) The Complaint included claims for relief for breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation and constructive fraud. (*Id.*) Harris did not seek or obtain the permission of the Bankruptcy Court prior to filing the Complaint or at any time thereafter. (ROA 1247.) In the Complaint, Harris alleged: "Because the allegations herein are *ultra vires* to the duties of these Defendants to Plaintiff's bankruptcy Estate, not capable of being authorized by the bankruptcy court, and beyond the jurisdiction of the bankruptcy court to adjudicate, no prior approval of the bankruptcy court is needed to bring these allegations against these Defendants in this Court." (ROA 48.)

On May 15, 2006, Wittman removed the case from state court to the Bankruptcy Court as adversary proceeding No. 06-90289-PB7. (ROA 385-86.) On June 7, 2006, Harris filed a motion for remand. (ROA 106-16.) The Bankruptcy Court denied the motion on July 17, 2006. (ROA 1080.)

On June 12, 2006, Harris had filed a motion to withdraw the reference with this Court, seeking an order withdrawing the referral of the case to the Bankruptcy Court. On August 16, 2006, this Court (Moskowitz, Judge) ruled that federal subject matter jurisdiction existed, and denied Harris's motion for withdrawal of the reference. (ROA 1477-81.)

All Appellees filed motions to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), on the grounds that, *inter alia*: (1) the Complaint is barred due to the failure of Harris to seek approval of the Bankruptcy Court prior to filing it; and (2) each

Appellee is entitled to derived quasi-judicial immunity as a result of the entry of the June 30 Order.  (ROA 150-218, 1337-1356.)

On July 21, 2006, while the motions to dismiss were pending, Plaintiff filed a First Amended Complaint ("FAC"), which dismissed all claims for relief except for the breach of contract claim.  (ROA 8-44.)  The breach of contract claim remained unchanged from that in the original Complaint.  Specifically, the FAC alleges that the Appellees breached the Settlement Agreement and the Stipulation for Settlement by "contriving" claims for fees and costs, and Appellees "then transferred the Alpine Property [i.e., the Unicus stock] to themselves, as consideration for assuming their contrived claims against [the Bankruptcy] Estate, and did so *nunc pro tunc* such that [the Bankruptcy] Estate never received any income from the Alpine property or any benefit from the settlement agreement."  (ROA 13.)

Following oral argument on the motions to dismiss, the Bankruptcy Court issued orders dismissing the action with respect to each of the Appellees.  In granting Wittman's Motion to Dismiss, the Bankruptcy Court made the following written conclusions of law:

1.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(A)(N) and (O).  The statutory predicates for the relief requested in the Motion are Federal Rules of Bankruptcy Procedure Rule 7012 and Federal Rules of Civil Procedure Rule 12.

2.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. 1334.

3.  Wittman was the duly appointed trustee of the Bankruptcy Estate, and was authorized to pur[su]e the Adversary Proceeding and comply with the Order.

4.  Plaintiff did not first seek leave from this appointing Court before suing Wittman, and no applicable exception allowing suit without such leave exists.  Consequently, the Court lacks subject matter jurisdiction, and dismisses this action pursuant to Federal Rules of Bankruptcy Procedure Rule 7012 and Federal Rules of Civil Procedure Rule 12(b)(1) and 12(h)(3).  *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005); *In re Kashani*, 190 B.R. 875, 885 (9th Cir. BAP 1995).

5.  Wittman is entitled to derived quasi-judicial immunity as a result of her actions taken in connection with the sale of the stock of Unicus Corporation to Swain pursuant to the Order.  As a result, the Complaint fails to state a claim for relief against Wittman and the Court dismisses this action on an alternative basis pursuant to Federal Rules of Bankruptcy Procedure Rule 7012 and Federal Rules of Civil Procedure Rule 12(b)(6).

(ROA 1281-82.)  The Bankruptcy Court's orders granting the other motions to dismiss were based on the same grounds.  (ROA 1240-48 (adding: "Under the Agreement, Swain was the

agent of Wittman and the Bankruptcy Estate in pursuing the Adversary Proceeding and in complying with the Order.   Under the Agreement, Movant was the agent of Swain in prosecuting the Adversary Proceeding and in complying with the Order."), 1275-92, 1429-30.) With respect to the law firms, the Bankruptcy Court also stated:

> 6.   Movant was not a party to the Stipulation for Settlement or the Settlement Agreement.   The Complaint's sole claim for relief, after amendment, is for breach of contract.   As a result, the Complaint fails to state a claim for relief against Movant and the Court dismisses this action on an alternative basis pursuant to Federal Rules of Bankruptcy Procedure Rule 7012 and Federal Rules of Civil Procedure Rule 12(b)(6).

(ROA 1248; *see also* ROA 1291-92.)

On August 23, 2006, Harris filed a Notice of Appeal.  (Doc. # 1.)  On August 30, 2006, one of the Appellees elected to have this appeal heard by this Court.  (*Id.*)  After receiving briefing from the parties, the Court heard oral argument on May 10, 2007.

## II.   Discussion

### A.   Statutory Basis for Appeal

This appeal is taken pursuant to 28 U.S.C. § 158, which states: "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."  28 U.S.C. § 158(a).

### B.   Standard of Review

"Removal of a case from state court to federal court raises questions of federal subject matter jurisdiction which are reviewed *de novo*.  The party seeking removal has the burden of establishing federal jurisdiction, and normally, the existence of federal jurisdiction on removal must be determined from the face of plaintiff's complaint."  *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934 (9th Cir. 1993) (quotation and citations omitted).   Also, this Court reviews *de novo* a bankruptcy court's decision to dismiss a complaint pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6).   *See In re Stoll*, 252 B.R. 492, 495 (9th Cir. BAP 2000).   "When

1  considering a motion to dismiss for failure to state a claim, a court must take as true all

2  allegations of material fact and construe them in a light most favorable to the nonmoving

3  party." *Id.* (citation omitted); *see also Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416

4  F.3d 940, 946 (9th Cir. 2005). "On a motion to dismiss, [a court] may take judicial notice of

5  matters of public record outside the pleadings." *MGIC Indem. Corp. v. Weisman*, 803 F.2d

6  500, 504 (9th Cir. 1986) (citations omitted); *see also U.S. ex rel. Robinson Rancheria Citizens*

7  *Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (a court "may take notice of

8  proceedings in other courts, both within and without the federal judicial system, if those

9  proceedings have a direct relation to matters at issue").

10  **C.    Subject-Matter Jurisdiction**

11  The Bankruptcy Court found that this action is a core proceeding pursuant to 28 U.S.C.

12  § 157(b)(2)(A), (N) and (O), and that it had subject-matter jurisdiction over this case pursuant

13  to 28 U.S.C. § 1334.

14  "[T]he district courts shall have original but not exclusive jurisdiction of all civil

15  proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.

16  § 1334(b). "Congress used the phrase 'arising under title 11' to describe those proceedings

17  that involve a cause of action created or determined by a statutory provision of title 11. . . .

18  The meaning of 'arising in' proceedings is less clear, but seems to be a reference to those

19  'administrative' matters that arise only in bankruptcy cases. In other words, 'arising in'

20  proceedings are those that are not based on any right expressly created by title 11, but

21  nevertheless, would have no existence outside of the bankruptcy." *In re Harris Pine Mills*, 44

22  F.3d 1431, 1435 (9th Cir. 1995) (quoting *In re Wood*, 825 F.2d 90, 96-97 (5th Cir. 1987)). "If

23  the proceeding does not invoke a substantive right created by the federal bankruptcy law and

24  is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to

25  the bankruptcy because of its potential effect, but . . . it is an 'otherwise related' or non-core

26  proceeding." *Id.* (quoting *Wood*, 825 F.2d at 97). "[C]laims that arise under or in Title 11 are

27  deemed to be 'core' proceedings, while claims that are related to Title 11 are 'noncore'

28  proceedings." *Id.* (citing *Robertson v. Isomedix, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994) ("Core

proceedings are matters concerning the administration of the estate and rights created by title 11.")).[4]

In *Harris Pine Mills*, the plaintiff sued the trustee and the trustee's agents in state court for fraud, negligence, and negligent misrepresentation relating to the plaintiff's purchase of a division of the corporate debtor. The trustee removed the action to state court, and plaintiff filed a motion for remand which the district court denied. The Ninth Circuit affirmed the district court's ruling that the plaintiff's post-petition claims were core proceedings subject to federal jurisdiction: "Plaintiffs' postpetition state law claims asserted against the bankruptcy trustee and his agents for conduct inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate involved a core proceeding subject to federal jurisdiction." *Id.* at 1438. In so holding, the Ninth Circuit noted that "the clear majority of decisions from other courts that have touched on this issue hold that post petition state law claims asserted by or against a trustee in bankruptcy or the trustee's agents for conduct arising out of the sale of property belonging to the bankruptcy estate qualify as core proceedings." *Id.* at 1437.

Similarly, Harris' breach of contract claim in the FAC arises at least in part from the sale of the Unicus stock.[5] (ROA 13.) As in *Harris Pine Mills*, Harris' post-petition state-law breach of contract claim is asserted against the bankruptcy trustee and her agents for conduct inextricably intertwined with the sale of property belonging to the Bankruptcy Estate. Therefore, this action is a core proceeding subject to federal jurisdiction. *See In re Harris Pine*

---

[4] The distinction between core and noncore is important, because it determines how the claims must be treated:

> In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master. In noncore matters, the bankruptcy court may not enter final judgments without the consent of the parties, and its findings of fact and conclusions of law in noncore matters are subject to de novo review by the district court. . . . In contrast to the bankruptcy court's authority in noncore cases, the bankruptcy court may enter final judgments in so-called core cases, which are appealable to the district court. The standard for appeal of core matters [to] the district court is the same as in other civil matters appealed from the district court to the circuit courts of appeal.

*In re Harris Pine Mills*, 44 F.3d at 1436 (citing 28 U.S.C. § 158(c)).

[5] As noted above, Unicus Corporation was the sole owner of the "Alpine property" referenced in the FAC. (ROA 13, 499, 969.)

*Mills*, 44 F.3d at 1438; *cf.* 28 U.S.C. § 157(b)(2)(N) ("Core proceedings include, but are not limited to . . . orders approving the sale of property. . . .").

Harris disputes that federal jurisdiction exists.  He argues that the Bankruptcy Court did not retain jurisdiction over the Settlement Agreement, and therefore the Bankruptcy Court had no jurisdiction over his state law claim that the Appellees breached the Settlement Agreement. He relies upon *In re Valdez Fisheries Development Association*, 439 F.3d 545 (9th Cir. 2006) in support of his argument.  *Valdez Fisheries* involved a lawsuit between creditors, which involved interpretation of a settlement agreement between the debtor and one of the creditors. The Ninth Circuit did not address the issue of core jurisdiction, but held that no "related to" jurisdiction or ancillary jurisdiction existed, in part because the bankruptcy court did not retain jurisdiction over the settlement agreement.  *See id.* at 547-50 (citing, *inter alia*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-82 (1994)).  At minimum, *Valdez Fisheries* is inapposite because it did not involve a trustee and/or a trustee's representative(s) being sued in state court.  As the Ninth Circuit earlier noted in *Harris Pine Mills*: "Most cases involving claims against bankruptcy trustees sued in state court appear to have resulted in the trustees' successful removal of the actions to federal district court.  Cases finding state law claims to be noncore proceedings, however, do not involve trustees as defendants."  *Harris Pine Mills*, 44 F.3d at 1437 n.10 (citations omitted).

This action is a core proceeding for the additional reasons that (1) the FAC alleges that absent the alleged misconduct by Appellees, there would have been more assets available to the Bankruptcy Estate (ROA 12-14), and (2) the FAC alleges that the Appellees' "contrived claims . . . were for pre-trial commissions, before and after trial attorney fees, pretrial costs, witness fees, recovery costs, pretrial and post trial associate counsel costs and trustee fees" (ROA 12-13).  As stated by Judge Moskowitz when denying Harris' motion for withdrawal of the reference to the Bankruptcy Court:

> I agree with [Bankruptcy Court] Judge Bowie . . . where Judge Bowie found under 1334 that there was jurisdiction. . . .
> And I also agree that this was a core matter, under three provisions.  Under 28 U.S.C. Section [157(b)(2)(A)] because it involves . . . matters concerning the administration of the estate; and two, it involves legal fees that lawyers would otherwise have to apply to get approval of from the bankruptcy estate, and also

the rights and liabilities and duties of the bankruptcy trustee.

Also under [§ 157(b)(2)(E)], orders the turnover of property to the estate.  That is essentially what this is . . . an order that they shall receive the real property. The parties made it into an order by having Judge Bowie so order the settlement. And then, finally, [§ 157(b)(2)(O)] which has been known as the catch-all provision, 'other proceedings affecting the liquidation of the assets of the estate.'

(ROA 1477-78.)[6]

Similarly, the Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit held in *Honigman, Miller, Schwartz & Cohn v. Weitzman* (*In re DeLorean Motor Co.*), 155 B.R. 521 (9th Cir. BAP 1993) that state law claims against a trustee and the trustee's attorneys constituted a core proceeding subject to federal jurisdiction.  In *Honigman*, the trustee in bankruptcy filed suit against John DeLorean and his attorney, Howard Weitzman, alleging a fraudulent transfer involving millions of dollars from DeLorean to Weitzman.  DeLorean and the trustee settled their dispute and the trial court later ruled in favor of Weitzman in the trustee's lawsuit.  Weitzman then brought a malicious prosecution action in state court against the trustee and the attorneys retained by the trustee to litigate the fraud action.  The BAP stated: "Although the Weitzman action asserts a state law claim, as the functional equivalent of an action against the trustee, it is inextricably tied to the determination of an administrative claim against the estate and is similarly tied to questions concerning the proper administration of the estate.  For these reasons, we determine that Weitzman's action against Schade and the Honigman defendants is within the scope of 28 U.S.C. § 1334(b) and a core proceeding within the scope of 28 U.S.C. § 157(b)."  *Honigman, Miller, Schwartz & Cohn*, 155 B.R. at 525.  As in *Honigman*, Harris' state law claim against the Appellees is "the functional equivalent of an action against the trustee," and "is . . . tied to questions concerning the proper administration of the estate."  *Id.*

---

[6]  Title 28, Section 157(b) provides in part:

(2) Core proceedings include, but are not limited to--

    (A) matters concerning the administration of the estate;

    . . .

    (E) orders to turn over property of the estate;

    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims . . . .

28 U.S.C. § 157(b)(2).

1    The Court finds that the Bankruptcy Court properly determined that subject-matter

2    jurisdiction exists pursuant to 28 U.S.C. § 1334(b), and that this case is a core proceeding

3    under 28 U.S.C. § 157(b).

4    **D.    Barton Doctrine**

5        The Bankruptcy Court dismissed Harris' action because "Plaintiff did not first seek

6    leave from this appointing Court before suing Wittman, and no applicable exception allowing

7    suit without such leave exists."  (ROA 1282.)  This was an application of the "*Barton*

8    doctrine,"[7] which, as applied by the Ninth Circuit, provides: "[A] party must first obtain leave

9    of the bankruptcy court before it initiates an action in another forum against a bankruptcy

10   trustee or other officer appointed by the bankruptcy court for acts done in the officer's official

11   capacity."  *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005) (citing, *inter alia*, *In

12   re Kashani*, 190 B.R. 875, 883-85 (9th Cir. BAP 1995)).  "The essence of the *Barton* doctrine

13   is that parties may not commence or maintain unauthorized litigation.  The only appropriate

14   remedy, therefore, is to order cessation of the improper action."  *Id.* at 976.  The protection

15   afforded by the *Barton* doctrine extends to others appointed by the bankruptcy court, including

16   the trustee's counsel.  *See In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP

17   1989); *see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1240-1241 (6th Cir. 1993) ("We

18   hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate,

19   are the functional equivalent of a trustee, where as here, they act at the direction of the trustee

20   and for the purpose of administering the estate or protecting its assets. . . .  The protection that

21   the leave requirement affords the Trustee and the estate would be meaningless if it could be

22   avoided by simply suing the Trustee's attorneys.  Therefore, leave of the Bankruptcy Court

23   must be granted before a suit may be brought against counsel for trustee, in their capacity as

24   counsel for trustee, since such suit is essentially a suit against the trustee.").

25

26       [7] "The *Barton* doctrine takes its name from *Barton v. Barbour*, 104 U.S. 126, 26 L. Ed.
672 (1881), in which the Supreme Court ruled that the common law barred suits against
27   receivers in courts other than the court charged with the administration of the estate.  The
Supreme Court held in *Barton* that, before suit is brought against such a receiver, leave of the
28   court by which the trustee was appointed must be obtained."  *In re Crown Vantage, Inc.*, 421
F.3d 963, 970 n.4 (9th Cir. 2005).

1    It is undisputed that Harris failed to obtain leave of the Bankruptcy Court prior to suing

2    Appellees.   Harris argues that his failure to obtain leave is excused by the exceptions to the

3    *Barton* doctrine.

4    There are two exceptions to the *Barton* doctrine.   First, leave of the bankruptcy court

5    is not required "when a trustee acts in excess of his authority and is sued in a state court for

6    such acts." *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967) (holding that "a trustee

7    wrongfully possessing property which is not an asset of the estate may be sued for damages

8    arising out of his illegal occupation in a state court without leave of his appointing court"); *see*

9    *also In re Balboa Improvements, Ltd.*, 99 B.R. at 970.   Here, the settlement and subsequent

10   sale of the property at issue in the FAC was expressly approved by the Bankruptcy Court.

11   (ROA 968-70 (order approving sale of the Unicus Corporation stock), 935-36 (order approving

12   sale of the Mercedes Benz automobile).)   The Bankruptcy Court expressly found that Swain's

13   purchase of the Unicus Corporation stock was in "good faith," within the meaning of 11 U.S.C.

14   § 363(m).   (ROA 969.)   This finding was affirmed by both this Court and the Ninth Circuit.

15   (ROA 995-98, 1016-18.)   Inherent in the Bankruptcy Court's orders is that the sale and the fees

16   associated with the sale--which were disclosed to the Bankruptcy Court (ROA 938-49, 951-

17   56)--were within the scope of the trustee's authority.   *See In re Martin*, 287 B.R. 423, 435

18   (Bankr. E.D. Ark. 2003) (holding that "[b]ecause the Court approved the settlement reached

19   by the Trustee, and the order approving the settlement has been upheld repeatedly despite

20   Debtor's numerous collateral attacks," "[t]he Court finds that the acts complained of are in fact

21   within the scope of the Trustee's authority, and as such, leave is required for Debtor or her

22   parents to sue the Trustee or his attorney in another forum").   If, in circumstances such as are

23   present here, a party could evade the requirements of the *Barton* doctrine simply by alleging

24   that the trustee and/or her agents acted outside the trustee's authority, then the exception would

25   swallow the rule.

26   The second exception to the *Barton* doctrine is codified in 28 U.S.C. § 959, which

27   provides in part: "Trustees . . . may be sued, without leave of the court appointing them, with

28   respect to any of their acts of transactions in carrying on business connected with such

property." 28 U.S.C. § 959(a). As explained by the Ninth Circuit:

> By its terms, this limited exception applies only if the trustee or other officer is actually operating the business, and only to acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise. Section 959(a) does not apply to suits against trustees for administering or liquidating the bankruptcy estate. Actions taken in the mere continuous administration of property under order of the court do not constitute an 'act' or 'transaction' in carrying on business connected with the estate.

*In re Crown Vantage, Inc.*, 421 F.3d at 971-72 (quotations omitted) (noting that "[t]he few examples of suits that have been allowed under § 959(a) include a wrongful death action filed against an operating railroad trustee and suits for wrongful use of another's property"); *see also In re DeLorean Motor Co.*, 991 F.2d at 1241 ("This exception does not apply to suits against the trustee for actions taken while administering the estate. Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted.") (citation omitted); *In re Balboa Improvements*, 99 B.R. at 970 ("This section was intended to permit actions redressing torts committed in furtherance of the debtor's business. However, this section was not intended to apply to a breach of a fiduciary duty in the administration of a bankruptcy estate. The bankruptcy court is responsible for resolving issues affecting the administration of the estate.").

In the FAC, Harris alleges that "Wittman failed to perform her obligations to receive and carry on the storage and related businesses associated with the Alpine Property, and do so in at least the same manner as [Harris] would have so managed for the benefit of the remaining creditors and for himself, all as required by the Settlement Agreement, the Mutual Release, California Law and 28 U.S.C. § 959." (ROA 14.) Harris further alleges that Appellees "transferred the Alpine Property to themselves . . . and did so *nunc pro tunc* such that [Harris]' Estate never received any income from the Alpine Property . . . . [Appellees] then *immediately* sold [Harris]' assets for approximately $3,500,000 and distributed the profit among themselves." (ROA 13 (emphasis added).)

The allegations of the FAC do not support the contention that the suit is based upon the Appellees' "acts of transactions in carrying on business connected with [the Alpine] property."

1    28 U.S.C. § 959(a).  In deciding whether "the facts and the remedy sought by the Appellant

2    fall within the narrow parameters of § 959(a) and outside the jurisdiction of the bankruptcy

3    court over the administration of the estate," the Court focuses on "the main purpose of the

4    suit." *In re Balboa Improvements*, 99 B.R. at 970.  The main purpose of Harris' suit is to seek

5    damages caused by Appellees' alleged misconduct in the administration the Bankruptcy Estate,

6    especially, Appellees' failure to transfer the property at issue to the Bankruptcy Estate.  (ROA

7    8-15.)  The alleged breach of contract was not premised on an act or transaction of Appellees

8    in carrying on the business at the Alpine property.  Therefore, § 959(a) is not applicable.

9         This Court affirms the Bankruptcy Court's dismissal of Harris' action because "Plaintiff

10   did not first seek leave from this appointing Court before suing Wittman, and no applicable

11   exception allowing suit without such leave exists."  (ROA 1282.)

12        **E.    Immunity**

13        The Bankruptcy Court dismissed Harris' action on the alternate grounds that Appellees

14   are entitled to derived quasi-judicial immunity from Harris' suit.  (*See, e.g.*, ROA 1281-82.)

15        "The Trustee is immune for actions that are functionally comparable to those of judges,

16   i.e., those functions that involve discretionary judgment."  *In re Castillo*, 297 F.3d 940, 947

17   (9th Cir. 2002) (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993)).

18   "Although, like the common-law bankruptcy judicial officers, the trustee is charged with many

19   legal, adjudicative, clerical, financial, administrative, and business functions, quasi-judicial

20   immunity attaches to only those functions essential to the authoritative adjudication of private

21   rights to the bankruptcy estate.  Therefore we must examine the particular function here at

22   issue." *Id.* at 951 (holding that a bankruptcy trustee is entitled to quasi-judicial immunity for

23   both scheduling and noticing the confirmation hearing because "the scheduling and giving of

24   notice of hearings are part of the judicial function of managing the bankruptcy court's docket

25   in the resolution of disputes.  This function is unquestionably discretionary in nature."); *cf.*

26   *Antoine*, 508 U.S. at 432-36 (holding that a court reporter who was required to record court

27   proceedings verbatim could not claim judicial immunity because his duties were not

28   discretionary).  "This protection [afforded by the immunity doctrine] extends to other

bankruptcy court appointees, including counsel for the trustee." *In re Bay Area Material Handling, Inc.*, 1995 WL 747954, at *5 (N.D. Cal., Dec. 6,1995) (citing *Smallwood v. United States*, 358 F. Supp. 398, 404 (E.D. Mo. 1973), aff'd mem., 486 F.2d 1407 (8th Cir. 1973)).

The allegations in the FAC concern the trustee and the trustee's agents performing the following functions: entering into the Settlement Agreement, transferring and selling assets of the Estate, and making claims for fees and costs. (ROA 10-14.) These functions are "essential to the authoritative adjudication of private rights to the bankruptcy estate." *In re Castillo*, 297 F.3d at 951 ("[Q]uasi-judicial immunity attaches to only those functions essential to the authoritative adjudication of private rights to the bankruptcy estate."). Therefore, the Appellees are entitled to quasi-judicial immunity from Harris' suit.

This conclusion is bolstered by the fact that, as set out above, Wittman and Swain obtained Bankruptcy Court approval for the settlement as well as the disposition of the assets at issue in the FAC, after disclosure to the Bankruptcy Court of, *inter alia*, the alleged "contrived claims" for fees and costs (ROA 938-49, 951-56). *See In re Jacksen*, 105 B.R. 542, 545 (9th Cir. BAP 1989) ("[A] trustee, who obtains court approval for actions under the supervision of the bankruptcy judge, is entitled to derived immunity.") (citations omitted).

The Bankruptcy Court's dismissal of Harris' suit is affirmed on the alternate basis of quasi-judicial immunity.

## III.   Conclusion

For the foregoing reasons, this Court **AFFIRMS** the orders of the Bankruptcy Court dismissing Harris' suit. The Clerk of the Court shall enter Judgment in favor of Appellees and against Appellant.

DATED:  August 21, 2007

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge

06cv1939